UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 7 Bankruptcy |
| Yehud-Monosson USA, Inc. | Bankruptcy No. 11-42834 |
| Debtor. | |

| | |
|---|---|
| REBEKAH NETT, | |
| Appellant, | Civil No. 12-448 (JNE) |
| v. | ORDER |
| NAUNI JO MANTY, | |
| Appellee. | |

This matter is before the Court on attorney Rebekah Nett's appeal from the United States Bankruptcy Court for the District of Minnesota's January 4, 2012 Order for Sanctions. For the reasons set forth below, the Court affirms the decision of the bankruptcy court.

## I.   BACKGROUND

On March 23, 2011, an entity called Yehud-Monosson USA, Inc. ("Yehud") filed a Chapter 11 bankruptcy petition in the Southern District of New York. The case was transferred to the bankruptcy court for the District of Minnesota and was subsequently converted to Chapter 7. Issues arose during the bankruptcy proceedings related to the turnover of various documents—the Chapter 7 Trustee, Nauni Jo Manty, asserted that certain documents were not turned over; the debtor's representative and president, Naomi Isaacson, contended that she had turned over all documents in her possession. The trustee filed a motion for turnover with the bankruptcy court on September 14, 2011. United States Bankruptcy Judge Dennis D. O'Brien

held a hearing on October 6, 2011 and entered an order granting the motion for turnover on October 7, 2011 ("Turnover Order"). The Turnover Order stated that if Isaacson failed to turn over the books, records, documents and information described in the Order, and the trustee submitted an affidavit identifying the missing material, the court would issue "the appropriate sanctions against Naomi Isaacson for her failure to comply with this court's order, which may include monetary sanctions and/or a finding of contempt punishable by arrest and incarceration."

The trustee believed that Isaacson failed to comply with the Turnover Order and filed an affidavit of non-compliance on October 17, 2011. Judge O'Brien recused himself on October 19, and United States Bankruptcy Judge Nancy C. Dreher took over the case. The trustee filed a motion for contempt on November 2, 2011. The hearing on the contempt motion was scheduled for 1:00 p.m. on November 17, 2011—but there was an error in the notice provided to Isaacson, which noticed the hearing at 1:30 p.m. instead of 1:00 p.m. Rebekah Nett, the attorney representing the debtor, appeared at 1:20 p.m. and learned of the mistake. During the hearing, it was also revealed that Isaacson may not have been properly served with the Turnover Order. The court continued the hearing and rescheduled it for December 6, 2011. On November 18, 2011, the bankruptcy court issued an order that continued the hearing on the trustee's contempt motion. The November 18 Order stated that "[a]t the continued hearing, the trustee will be permitted to make a record—one that meets the test for a finding of contempt—that Naomi Isaacson . . . received notice of, or otherwise had knowledge of the court's [Turnover Order]."

Isaacson and Nett erroneously believed that the November 18 Order already found that Isaacson was in contempt for violating the Turnover Order and that she no longer had an opportunity to present her arguments to the court. In response, on November 25 Isaacson filed a motion to vacate the November 18 Order. She submitted a memorandum in support of her

motion to vacate, signed by Nett and verified by Isaacson. The "factual background" section of the memorandum contained numerous allegations of bigotry, deceit, and conspiracy against Judge Dreher, Judge O'Brien, the Chapter 7 Trustee, the United States Trustee, and bankruptcy courts in general.[1] A hearing was held on the motion to vacate on November 29 and the bankruptcy court denied the motion. At that hearing, Nett admitted that Isaacson had written the inflammatory statements and that she had merely signed off on the memorandum. Nett also acknowledged that she had an obligation to make a reasonable inquiry into the law and facts before signing papers submitted to the court.

On December 7, the Court, *sua sponte*, issued two Orders to Show Cause related to the November 25 submissions—one directed at Rebekah Nett, and the other at Naomi Isaacson. The Orders stated that "[t]o be clear, the court's November 17, 2011 order made absolutely no ruling on the merits of the trustee's motion for contempt"[2] and that the "factual background" section of the memorandum in support of the motion to vacate the November 18 Order "was replete with unsupported and outrageous allegations of bigotry, deceit, [and] conspiracy." It identified ten separate statements contained within the memorandum and ordered Nett and Isaacson to appear at the January 4 hearing to show cause as to why sanctions should not be imposed against them pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure.[3] The Order to Show Cause

---

[1]     The Court does not find it helpful or necessary to repeat all of the allegations contained within Isaacson's brief, but a representative sample of such statements includes phrases such as "black-robed bigot," "ignoramus, bigoted Catholic beasts," and "Catholic Knight Witch Hunter."

[2]     The bankruptcy judge dated the order November 17, 2011, but it was filed and docketed on November 18, 2011.

[3]     Federal Rule of Bankruptcy Procedure 9011(b) provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or

stated that possible sanctions may include, among other things, a monetary sanction of $1,000

per factually unsupported statement, payable within ten days of any sanction order.[4]

In response to the Order to Show Cause, Nett submitted a written response, in which she

explained that her client and its principals "absolutely know that all decisions against them in

every situation are due to organized discrimination and prejudice" and that they "believe that all

the statements made in the November 25, 2011 motion were in fact supported by fact." As a

means of clarifying the offensive statements contained within the November 25 submissions,

Nett referred the bankruptcy court to a section in her response memorandum entitled "Historical

Facts Supporting Controversial Statements," a twenty-six page dissertation chronicling what Nett

called the "infiltration of our justice system" by "the Roman cult and their military arm—the

Jesuit Order." Beginning with the sixteenth century, the memorandum reviewed the Jesuits'

alleged involvement with, among other things, the African slave trade, the French Revolution,

the Congress of Vienna, the American Civil War, Nazi Germany and the Holocaust, the Vietnam

---

unrepresented party is certifying that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the
circumstances,--
  (1) it is not being presented for any improper purpose, such as to harass or to
  cause unnecessary delay or needless increase in the cost of litigation; . . .
  (3) the allegations and other factual contentions have evidentiary support or, if
  specifically so identified, are likely to have evidentiary support after a
  reasonable opportunity for further investigation or discovery . . . .

Fed. R. Bankr. P. 9011(b). Rule 9011 also provides that on "its own initiative, the court may
enter an order describing the specific conduct that appears to violate subdivision (b) and
directing an attorney . . . or party to show cause why it has not violated subdivision (b) with
respect thereto." Fed. R. Bankr. P. 9011(c)(1)(B).

[4]     The Order to Show Cause that was directed at Nett also proposed the following sanctions:
a requirement that Nett attend no less than 30 hours of ethics training within the next twelve
months; a public, written apology to the court, Judge O'Brien, the trustee, and the United States
Trustee; issuance of an injunction against further filings in the bankruptcy court containing
disparaging remarks against the court or other parties; and possible removal from the roster of
attorneys admitted to practice before the United States District Court and the bankruptcy court.

War, the assassination of President John F. Kennedy, terrorism in the United States, and the sinking of the Titanic. From this purported historical background, Nett argued that the statements in the November 25 submissions "are unfortunately statements founded in truth" and that the bankruptcy court and trustee "are working for this infiltrated system to bring about the Debtor's harm rather than justice." Nett therefore contended that each of the ten identified statements was factually supported. She also argued that because of the uniqueness of her client's case, there was little likelihood of repetition of the conduct in the future, and so a monetary sanction amounting to $10,000 was excessive and unnecessary. Finally, without providing facts or evidence relating to her ability to pay the sanction, she requested that the bankruptcy court inquire as to her ability to pay and make provisions to pay the sanction over an extended period of time.

At the hearing on January 4, Nett acknowledged that her response memorandum did not effectively deal with the derogatory name-calling, but argued that she had been trying to provide some historical context as to her client's position and beliefs. She also asserted that "this is a one-of-a-kind case" and that such conduct was not likely to recur, so the court should limit the sanctions to what is sufficient to prevent further conduct. With respect to the specific monetary amount, Nett argued that she would be unable to pay the amount within ten days, and requested a longer period of time.

The bankruptcy judge found that Nett had not made a reasonable investigation into the facts before making the offensive statements identified in the Order to Show Cause. The judge referred to the November 29 hearing, in which Nett admitted that she had not made a reasonable inquiry, but rather allowed Isaacson to write the inflammatory document and then simply signed off on it. The bankruptcy judge explained that the statements were not merely "statements of

thought, philosophy, or religious view," but were unsubstantiated, uninvestigated, and unfounded "statements of fact" about the bankruptcy court, the United States courts in general, and the practice of *ex parte* communications.  For that reason, the bankruptcy judge held that Nett violated Federal Rule of Bankruptcy Procedure 9011(b)(1) and (3).  The judge, however, reduced the sanction from $1,000 per statement to $500 per statement, based upon Nett's discussion of her ability to pay—amounting to a total monetary sanction of $5,000.  The judge also made the penalty payable within ninety days, rather than ten days.  Nett was enjoined from filing future documents referring to the religious beliefs of the court or other parties to the litigation.  The bankruptcy court ordered Nett to attend ten hours of legal ethics training within twelve months, and referred Nett to the United States District Court for possible removal.  Nett now appeals from this Order for Sanctions.[5]

## II.   DISCUSSION

The Court has authority to hear appeals from final orders of the bankruptcy court.  28 U.S.C. § 158(a)(1) (2006).  The Court also has discretion to hear appeals from interlocutory bankruptcy court orders.  *Id.* § 158(a)(3); *In re M & S Grading, Inc.*, 526 F.3d 363, 368 (8th Cir. 2008).  "To determine the finality of a bankruptcy court order we consider 'the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; (3) the extent to which a later reversal on [the contested] issue would require recommencement of the entire proceeding.'"  *In re M & S Grading*, 526 F.3d at 368 (citation omitted).  "Although this standard is more flexible than in nonbankruptcy contexts, an order

---

[5]     The court imposed the same monetary sanctions upon Isaacson, from which Isaacson has also appealed.  The Court addresses Isaacson's appeal in a separate order.  *Isaacson v. Manty*, Civil No. 12-448 (JNE).

entered before the conclusion of a bankruptcy case is not subject to review [as a "final order"] unless it finally resolves a discrete segment of the underlying proceeding." *Id.*

It is unclear whether an Order for Sanctions under Rule 11 (or Rule 9011) is an immediately appealable "final order" under 28 U.S.C. § 158(a)(1).[6] *Compare Crookham v. Crookham*, 914 F.2d 1027, 1029 n.4 (8th Cir. 1990) (noting that "Rule 11 sanctions . . . are immediately appealable as a final decision under § 1291, and under the [] collateral order doctrine" (citation omitted)), *with Dieser v. Cont'l Cas. Co.*, 440 F.3d 920, 924 (8th Cir. 2006) (describing Rule 11 sanctions as "clearly interlocutory" and stating that "a 'belief that such a decision is a final judgment would *not* be reasonable'" (quoting *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991))).  The United States Supreme Court in *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 204 (1999), held that Rule 37 sanctions are not "final orders" and are also not immediately appealable under the collateral order doctrine.  Although the Eighth Circuit has not addressed the effect of *Cunningham* on Rule 11 sanctions, other circuit courts have held that *Cunningham* applies to Rule 11 sanctions, and that such sanctions are not immediately appealable as final or collateral orders.  *See, e.g., Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 819 (9th Cir. 2012) (holding that sanctions orders under Rule 9011 are not appealable collateral orders); *Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331, 339 (3d Cir. 2001) (stating that the Supreme Court in *Cunningham* "rejected a case-by-case approach in deciding whether an order was separate from the merits of the litigation in favor of a *per se* rule that sanctions orders are inextricably intertwined with the merits," and applying *Cunningham* to other types of sanctions); *Williams v. Midwest Emp'rs Cas. Co.*, 243 F.3d 208, 210 (5th Cir.

---

[6]     "The language of Rule 9011 closely tracks the language of [Rule 11 of the Federal Rules of Civil Procedure] and law interpreting Rule 11 is applicable to Rule 9011 cases." *Grunewaldt v. Mut. Life Ins. Co. of N.Y. (In re Coones Ranch, Inc.)*, 7 F.3d 740, 743 (8th Cir. 1993).

2001) (finding Rule 11 sanctions are neither appealable as final decisions nor as collateral orders).

Where a bankruptcy order is not a final order, the district court may nevertheless grant leave for an interlocutory appeal. 28 U.S.C. § 158(a)(3). The Court may construe the notice of appeal as a motion for leave to appeal. Fed. R. Bankr. P. 8003(c). "The decision to deny leave to appeal an interlocutory bankruptcy order is purely discretionary." *In re M & S Grading*, 526 F.3d at 371. Because of the unsettled law surrounding the immediate appealability of Rule 11 sanctions, and because the issues raised in this appeal are sufficiently separate from those at issue in the underlying bankruptcy proceedings, the Court will consider the merits of Nett's appeal from the sanctions order.

We review the imposition of monetary sanctions under Rule 9011 for an abuse of discretion. *Schwartz v. Kujawa (In re Kujawa)*, 270 F.3d 578, 581 (8th Cir. 2001). The Court reviews "the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re M & S Grading*, 526 F.3d at 367. Nett asserts that the bankruptcy court abused its discretion in three ways. First, she contends that that court abused its discretion by presiding over the show cause hearing, "despite her obvious emotional embroilment in the matter." Second, she argues that the court abused its discretion in finding that she had violated Rule 9011 in connection with the ten statements identified in the Order to Show Cause. Third, she asserts that the court abused its discretion by imposing an excessive penalty that was not limited to the amount necessary to deter future violative conduct, and that the bankruptcy court did not investigate Nett's ability to pay the monetary sanction. The Court will address each argument in turn.

8

## A.  Failure to Recuse

Nett argues that the bankruptcy court abused its discretion by presiding over the show cause hearing on January 4, "despite [the bankruptcy judge's] obvious emotional embroilment in the matter." Appellant's Br. 20.  Citing cases dealing with criminal contempt proceedings, Nett asserts that due process required that the offended bankruptcy judge refer the sanctions issue to another judge. *See, e.g., Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971); *Offutt v. United States*, 348 U.S. 11 (1954); *Taylor v. Hayes*, 418 U.S. 488 (1974); *Cooke v. United States*, 267 U.S. 517 (1925).  Essentially, Nett attempts to persuade this Court to equate Rule 9011 sanctions with criminal contempt sanctions.  She cites no authority to support this proposition, and, in fact, Rule 9011 (or Rule 11) sanctions are *not* the same as contempt sanctions and do not require the same procedures. *See, e.g., Donaldson v. Clark*, 819 F.2d 1551, 1558-59 (11th Cir. 1987) ("Nothing in the text of Rule 11 or in the Advisory Committee Note indicates that due process requires a court to follow the procedures called for by Fed. R. Crim. P. 42(b) for criminal contempt proceedings before it can impose a monetary sanction pursuant to Rule 11. Both the note and policy considerations tend to the opposite conclusion. . . . A violation of Rule 11 is fundamentally different from an infraction of criminal contempt and therefore warrants different sanction proceedings."); *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 552 (9th Cir. 2004) (rejecting the necessity of criminal contempt protections in Rule 11 proceedings); *Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1137 (10th Cir. 1991) (finding that Rule 11 sanctions do not require the procedures called for by Rule 42(b) of the Federal Rules of Criminal Procedure);

*Wayland v. McVay (In re TByrd Enters.), LLC*, 354 F. App'x 837, 839 (5th Cir. 2009) (stating

that "there is no legal basis for equating" Rule 9011 sanctions and criminal contempt sanctions).[7]

Rule 9011 provides that a bankruptcy court may initiate sanctions, as long as it first

issues an order to show cause. Fed. R. Bankr. P. 9011(c)(1)(B), (c)(2)(B).  The only due process

the rule requires is "notice and a reasonable opportunity to respond." Fed. R. Bankr. P. 9011(c).

The bankruptcy court issued an Order to Show Cause, and Nett had an opportunity to respond—

both in writing and at the January 4 hearing.  Thus, she was afforded all the process Rule 9011

requires.

To the extent that Nett attempts to claim that the bankruptcy judge abused her discretion

by failing to recuse herself, *sua sponte*, the Court also finds the argument to be without merit.[8]

Nett never filed a motion to recuse, nor did she raise this issue before the bankruptcy court.

Where a failure to recuse claim is first raised on appeal, the court reviews for plain error, rather

than abuse of discretion.  *See Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 663 (8th Cir.

2003).  "To prove plain error the defendant must show that '(1) the district court committed an

error, (2) the error is clear or obvious, and (3) the error affected his substantial rights.'" *United*

*States v. Jean-Guerrier*, 666 F.3d 1087, 1091 (8th Cir. 2012) (citation omitted).  "An error

affects a substantial right if it is prejudicial." *United States v. Woods*, 670 F.3d 883, 888 (8th Cir.

---

[7]    Additionally, Nett cites two cases from other circuits dealing with contempt sanctions imposed under the court's inherent power, *see Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 130 (2d Cir. 1998); *Crowe v. Smith*, 151 F.3d 217, 227-29 (5th Cir. 1998), but these, too, are inapposite since contempt sanctions under the court's inherent power are different than sanctions imposed for violating Rule 9011.

[8]    Nett cites no authority, such as 28 U.S.C. § 455, as the basis for a failure to recuse claim. "Subsection 455(a) requires a United States judge to 'disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996) (quoting 28 U.S.C. § 455(a)).  Subsection 455(b) requires a judge to recuse himself "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

2012) (internal quotation marks omitted). "Even if the defendant meets these three requirements of plain error, an appellate court will only reverse if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Jean-Guerrier*, 666 F.3d at 1091. "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Fletcher*, 323 F.3d at 664 (internal quotation marks omitted).

Nett has not shown that the bankruptcy judge was biased against her or that Nett was prejudiced by any such bias. She asserts that the judge was personally offended by the statements in the memorandum that Nett signed, but she provides no evidence that the judge acted in any way that would indicate bias. Nett claims that "[a]lthough Judge Dreher did restrain herself in her remarks, her thinly veiled and heavily guarded anger were clearly visible and audible on November 29 2011, December 6, 2011, and January 4, 2012." Reply Br. 5. She ignores, however, that "recusal is not necessarily required even after a district court has expressed 'impatience, dissatisfaction, annoyance, and even anger' toward a party." *United States v. Rubashkin*, 655 F.3d 849, 858 (8th Cir. 2011) (citing *United States v. Sypolt*, 346 F.3d 838, 839 (8th Cir.2003)); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (explaining that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible" and that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"). Other than this "thinly veiled" anger, Nett provides no support for her assertion that the bankruptcy judge was unfit to preside over the Show Cause hearing. The

11

mere fact that the bankruptcy court initiated Rule 9011 sanctions *sua sponte* does not demonstrate bias, especially since the rule specifically provides for court-initiated orders to show cause regarding Rule 9011 violations. The bankruptcy court's ultimate finding of Rule 9011 violations and imposition of sanctions also does not prove bias. *See Fletcher*, 323 F.3d at 665 ("An adverse ruling does not constitute a sufficient basis for disqualification without a clear showing of bias or partiality."). Even if this Court were to find that the bankruptcy judge was so personally offended that she was unable to impartially decide the Rule 9011 issue, Nett provides no argument or evidence that she was prejudiced by the judge's failure to recuse herself. Nett offers no reason to believe that any other judge would have reached a different decision regarding the propriety of Rule 9011 sanctions based on the statements in the November 25 memorandum.

Thus, the Court finds that the bankruptcy judge did not commit a clear or obvious error in failing to recuse herself *sua sponte*. *See Rubashkin*, 655 F.3d at 858 (stating that the Eighth Circuit "ha[s] never found that a district court plainly erred in this manner," and is very "reluctant to do so") (citation omitted)). There is no evidence of bias, and even if the bankruptcy judge's expressions of anger were sufficient to demonstrate bias, Nett has not shown she was prejudiced by any such bias—thus, there is no indication that any alleged error affected Nett's substantial rights.

Moreover, "[a] recusal motion must be 'timely made,'" meaning that a party must "raise a claim 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" *Rubashkin*, 655 F.3d at 858 (citations omitted). A failure to do so "can result in waiving or forfeiting judicial review." *Fletcher*, 323 F.3d at 664. Nett argues that the statements she submitted to the bankruptcy court on November 25 offended the bankruptcy

12

judge, so much so that the judge was unfit to preside over the hearing.  But Nett did not raise this issue at the November 29, December 6, or January 4 hearings.  It was clear by November 29 that the bankruptcy judge believed the statements to be offensive, inflammatory, and "irresponsible, unprofessional, and unbelievably and unmitigatingly outrageous." "[M]otions to recuse should not 'be viewed as an additional arrow in the quiver of advocates in the face of [] adverse rulings." *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d at 1358  (citation omitted).  Nett's argument regarding recusal is not timely.

## B.  Violation of Rule 9011

Nett argues that the bankruptcy court abused its discretion in finding that she violated Rule 9011 in connection with the ten statements identified in the Order to Show Cause.  Rule 9011 requires that every pleading, motion, and paper be signed by an attorney.  Fed. R. Bankr. P. 9011(a).  The signature constitutes a certification that to the best of the attorney's knowledge, information, and belief, "formed after an inquiry reasonable under the circumstances," the pleading, motion, or paper "is not being presented for any improper purpose, such as to harass," and that "the allegations and other factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b)(1) and (3).  The bankruptcy court may impose Rule 9011 sanctions on its own initiative, but must first issue an order describing the conduct that appears to violate the rule and directing the attorney to show cause why she has not violated the rule.  Fed. R. Bankr. P. 9011(c)(1)(B).  The standard for determining whether an attorney has violated the rule "is whether the attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1009 (8th Cir. 2006) (citation omitted).

Nett argues that she was not given notice or an opportunity to be heard. She contends that the bankruptcy judge did not decide the issue of sanctions on January 4, but rather decided the issue on November 29. At the January 4 hearing, the bankruptcy judge stated that she believed the question of liability had already been established as of November 29. At the November 29 hearing, Nett admitted that she did not write the offensive language—instead, she permitted her client to write the memorandum, and she merely signed off on it without conducting any investigation, let alone a reasonable investigation, into the factual basis for the statements in the memorandum. Nett contends that because she "was not presented with any systematic itemization of the statements deemed objectionable" prior to the November 29 hearing, the bankruptcy court abused its discretion in finding that Nett violated Rule 9011.

The Court is not persuaded. Based upon Nett's admissions in the November 29 hearing, the bankruptcy court did not err in believing that it had already been established that Nett had violated Rule 9011. Nett had stated she merely signed off on the memorandum, and had not even read all the offensive statements that were included within that memorandum. Further, the record clearly indicates that the bankruptcy court did *not* decide the issue of sanctions prior to the January 4 hearing. The court first issued an Order to Show Cause, which did provide a "systematic itemization" of the offensive statements. Nett was given two opportunities to respond—once in writing, and again orally at the January 4 hearing. After the hearing, the bankruptcy court found that each of the ten identified statements constituted a violation of Rule 9011 because Nett did not reasonably investigate the factual basis for the statements before presenting them to the court. The court also found that the statements were presented for an improper purpose. This Court finds no clear error in the bankruptcy court's findings. "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).  Based upon the extreme nature of the statements Nett presented to the bankruptcy court on November 25, and her subsequent inability to provide factual support for such statements,[9] the bankruptcy court did not clearly err in finding that Nett violated Rule 9011.

## C.  Amount of Sanction

Finally, Nett argues that the court abused its discretion by imposing monetary and non-monetary sanctions that were "overly excessive" and "not limited to an amount that fits the conduct at issue for the purposes of deterrence."  Nett also contends that despite being put on notice that ability to pay may be a factor, the bankruptcy court did not investigate this factor.

"Rule 9011 explicitly states that '[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'"  *Schwartz v. Kujawa (In re Kujawa)*, 270 F.3d 578, 583 (8th Cir. 2001) (quoting Fed. R. Bankr. P. 9011(c)(2).  Citing *MHC Investment Co. v. Racom Corp.*, 323 F.3d 620, 624 (8th Cir. 2003), Nett contends that the court's reasoning for a given sanction should be clear, and that the bankruptcy court "gave no reasoning or insight as to how she arrived at the amount of $500" per statement.  Appellant's Reply Br. 2.  She argues that the sanctions were excessive because she had already informed the bankruptcy court that the case had been very "difficult" for her and that the situation was unlikely to repeat itself.  Essentially, Nett asserts that

---

[9]     Despite Nett's attempt to provide factual support for the statements in her written response to the Order to Show Cause, she acknowledged that her response did not address the "name calling," and there is nothing in the record to indicate that such name-calling or accusations of bigotry and deceit had any factual support.

because she promised not to violate Rule 9011 again, the monetary and non-monetary sanctions were not necessary to deter future violations.

The purpose of Rule 9011 is "to deter baseless filings and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Sanctions under Rule 9011 are intended not only to deter repetition of such conduct by the party being sanctioned, but also to "deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). If an attorney were permitted to present papers to the court containing wildly inflammatory and unsubstantiated accusations of bigotry and conspiracy, and was then *not* sanctioned merely because she promised not to do it again, such an outcome would not likely deter others from engaging in similar inappropriate conduct in the future. Further, the conduct for which Nett was sanctioned was the complete shirking of her responsibilities under Rule 9011. Before signing the memorandum and presenting it to the court, Nett was obligated to conduct a reasonable investigation into the factual basis for the statements made in the memorandum. Instead, she stuck her head in the sand and signed off on the memorandum drafted by her client. Therefore, the bankruptcy court did not abuse its discretion in imposing sanctions, despite Nett's assurance that the situation was unlikely to recur.

Although the bankruptcy court could have more thoroughly explained its rationale for setting the specific amount of the sanction, the Court nevertheless finds that the bankruptcy court's reasoning for imposing the sanctions was sufficiently clear and the bankruptcy court did not abuse its discretion. "We give '[d]eference to the determination of courts on the front lines of litigation' because these courts are 'best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted.'" *MHC Inv. Co.*, 323 F.3d at 624

(citation omitted). Based upon the extreme nature of the accusations, the wholly unwarranted and unsubstantiated insults hurled at the bankruptcy court and other parties to the bankruptcy litigation, and Nett's inability to provide adequate factual support for such statements, the Court finds that the bankruptcy court did not abuse its discretion in imposing both the monetary and non-monetary sanctions. After being warned that the bankruptcy court may impose sanctions, including a monetary penalty amounting to $10,000, Nett continued to insist that the offensive statements were true and that the court was "working for this infiltrated system to bring about the Debtor's harm rather than justice." Thus, if the penalties initially threatened did not deter Nett from making unsubstantiated statements, the lesser penalties actually imposed cannot be more than necessary to deter such conduct. Even now, Nett continues to assert that the offensive statements in the memorandum were substantiated. *See* Appellant's Reply Br. 4. There has been no demonstration of remorse or even an acknowledgement of the impropriety of her conduct. Examining the Rule 9011 sanctions in context, the extent and amount of the sanctions did not constitute an abuse of discretion.

Finally, Nett asserts that the bankruptcy court failed to consider her ability to pay the monetary sanction. She argues that because she put the court on notice that ability to pay would be an issue, the court had an obligation to consider this factor. But she also acknowledges that the bankruptcy court *did*, in fact, consider her ability to pay. Nett argued not that she was unable to pay a $10,000 penalty, but rather that she was unable to pay that amount within ten days, as suggested in the Order to Show Cause. Based upon Nett's arguments, the bankruptcy court reduced the penalty from $1,000 per statement to $500 per statement, and made the sanction payable within ninety days rather than ten days. Thus, it is clear that the bankruptcy court did consider this factor.

To the extent that Nett argues that the court did not make further inquiry into Nett's ability to pay after reducing the sanction to $5,000, it was Nett's burden to produce evidence of an inability to pay this amount. *See Landscape Props., Inc. v. Whisenhunt*, 127 F.3d 678, 685 (8th Cir. 1997) ("Nothing in the record indicates, or even suggests, however, that [appellant] is unable to pay the amounts. If that were the situation, it was [appellant's] obligation to raise that point before the district court, since he was the one who had that information."); *see also Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) (stating that it was the sanctioned party's obligation to raise his inability to pay before the lower court); *White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir.1990) ("Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status."). Nett did not provide the bankruptcy court with any financial records, affidavits, or other evidence of her inability to pay the $5,000 sanction, nor is there any such evidence before this Court. Thus, she has failed to carry her burden and the bankruptcy court did not abuse its discretion.

## III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The bankruptcy court's Order for Sanctions as to Rebekah Nett is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 11, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge